# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| WILLIE FRANK WRIGHT, JR., | : | |
| Plaintiff, | : | |
| | : | NO. 5:10-CV-198 (MTT) |
| VS. | : | |
| BETH EUBANKS, *et al.*, | : | |
| | : | Proceedings Under 42 U.S.C. §1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |

## RECOMMENDATION TO DISMISS

Before the Court is a Motion to Dismiss or, Alternatively, Motion for Summary Judgment, filed by Defendant Dr. Theron Harrison (Doc. 24). Defendants Nurse Beth Eubanks and Jail Officer Bloodworth have filed a joint Motion for Summary Judgment (Doc. 29). For the reasons set forth below, it is **RECOMMENDED** that both motions be **GRANTED**, and that summary judgment be entered as to all remaining claims.

### FACTUAL AND PROCEDURAL BACKGROUND

The alleged conduct forming the basis of this action occurred while Plaintiff was confined at the Baldwin County Jail. At that time, Nurse Eubanks and Officer Bloodworth were both jail employees and Defendant Harrison, a private physician, provided medical care to the jail's inmates pursuant to a contract with Baldwin County.

Because Plaintiff is proceeding *pro se*, the Court accepts the allegations of Plaintiff's Complaint as "evidence," as if they were sworn testimony in an affidavit, for purposes of evaluating Defendants' Motions for Summary Judgment. The Complaint alleges that on the morning of April 27, 2010, Plaintiff fell out of his bed. Although the Complaint is not explicit, it implies that this fall

-1-

aggravated a pre-existing back injury. Plaintiff contends that Defendant Eubanks had cleared Plaintiff to be housed in the jail's general population without providing him with a bottom bunk profile, despite knowledge of this preexisting back condition. Plaintiff states that he was resting on his bunk when Officer Valerie Parham came into his cell yelling "wake up, get up." According to Plaintiff, the next thing he remembers is being helped into a wheelchair by Defendants Eubanks and Bloodworth. Once in the wheelchair, Plaintiff states that he was pushed to a holding cell where he remained for four hours until another officer transported him to the local Emergency Room. While in the Emergency Room, Plaintiff underwent x-rays and a CT scan. Later that day, Plaintiff was returned to the jail.

Plaintiff states that he was seen by Defendant Harrison the next day. In response to Plaintiff's complaints of pain and of numbness in his leg, Dr. Harrison allegedly stated that "it could be a nerve." Complaint, p. 5 (Doc. 1). Plaintiff alleges that Dr. Harrison also said, "he had on his glasses and he still could not see a problem." Id. at p. 4. Harrison then provided Plaintiff with pain medication but refused to arrange for further testing or treatment by an orthopaedic specialist.

DISCUSSION

Plaintiff has failed to create a genuine issue of material fact with regard to his claims against any of the above Defendants. To establish a violation of the Eighth or Fourteenth Amendment related to medical treatment, a prisoner must allege acts or omissions sufficiently harmful to evidence "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To show deliberate indifference, the prisoner must satisfy both an objective and a subjective component. Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994) ), *overruled in part on other grounds,* Hope v. Peltzer, 536 U.S. 730 at 739 (2002), (citing Wilson v. Seiter, 501 U.S. 294 (1991) (subjective component), Whitley v. Albers, 475 U.S. 312

(1986)(subjective component), and Rhodes v. Chapman, 452 U.S. 337 (1981)(objective component). With regard to the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). With respect to the subjective component, a prisoner must allege, and ultimately prove, three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999). As these requirements make clear, in the context of a 42 U.S.C. §1983 lawsuit, "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable. Taylor, 221 F.3d at 1258. Equally important in the context of this case is the fact that a prisoner cannot establish a constitutional violation simply because he "may have desired different modes of treatment" than that which was provided to him. Hamm v. DeKalb County, 774 F.2d 1567, 1576 (11th Cir. 1985). Such course of treatment claims, by definition, involve the "exercise of professional judgment,", and, as such, are not actionable under the Eighth or Fourteenth Amendment. Estelle, 429 U.S. at 105; Hamm, 774 F.2d at 1576; accord Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (1st Cir. 1981) ("We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. [ ] Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.") (internal citations omitted). This is so "even if the harm ultimately was not averted," where it appears that the prison officials did not disregard a known risk and instead acted to address the risk. Farmer v. Brennen, 511 U.S. 825, 844 (1970).

## Claims against Nurse Eubanks

Plaintiff brings two claims against Nurse Eubanks. First, he contends that she had him assigned to general population without providing him with a bottom bunk profile, despite knowledge of a previous back injury. Second, he contends that she delayed his transport to the emergency room in an ambulance after he fell from his bunk.

As to the first claim, Plaintiff has failed to present any evidence to show that Nurse Eubanks participated in the decision to move him to general population or that she had knowledge of a serious medical condition that required special housing accommodation. Nurse Eubanks has testified, by affidavit, that she was not involved in the decision to assign Plaintiff to general population. Eubanks Aff. ¶ 5 (Doc. 29-1). Plaintiff has cited no evidence to show that Nurse Eubanks was involved in such decisions. Nurse Eubanks has further testified that she was not aware of any medical reason for Plaintiff to be assigned to a particular housing area. Id. Plaintiff has offered no evidence to show that he required special accommodations, beyond his statement that he had previously been housed in a medical dorm because of his back, anus, and legs. There is nothing in the record to indicate that Nurse Eubanks had notice of any doctor's orders or other circumstances to give her notice that placement in general population without a bottom bunk profile would present a risk of serious harm to Plaintiff. In the absence of such evidence, Plaintiff cannot demonstrate that Nurse Eubanks acted with deliberate indifference and Nurse Eubanks is entitled to judgment as a matter of law.

As to the second claim, regarding delay in treatment, the record does not indicate any delay of constitutional significance and does not indicate that Nurse Eubanks had a role in any delay that occurred. Nurse Eubanks has testified that she responded shortly before 11:00 a.m. to a report that Plaintiff had rolled off his bunk. Id. at ¶ 6. Although Plaintiff complained of pain, she observed that

he "was not in apparent distress and did not have any visible injury, visible dislocation, open fracture or obviously deformed bone." Id. at ¶ 7. Despite her own evaluation that Plaintiff was not injured, Nurse Eubanks recommended that the Sheriff's Office transport him to the hospital as a precaution. Id. She states that she did not have any authority over the timing of Plaintiff's transport, but observes that medical records show that Plaintiff reached the hospital at approximately 2:30 p.m., three and a half hours after she saw him. Plaintiff has offered nothing to rebut Nurse Eubanks' account. This record is insufficient to establish that Nurse Eubanks acted with deliberate indifference to a serious medical need.

Claims against Officer Bloodworth

With respect to Officer Bloodworth, Plaintiff's only allegation is that, after falling from his bunk, Officer Bloodworth came to his cell and helped him on to a wheelchair. Bloodworth has testified by affidavit that his only involvement with Plaintiff was in assisting him into a wheelchair and wheeling him to the booking area to await transport to the emergency room. In response to the Motion for Summary Judgment, Plaintiff conceded that the facts in Officer Bloodworth's affidavit are undisputed. Doc.32, p.1. These facts do not establish deliberate indifference. As such, Officer Bloodworth is entitled to judgment as a matter of law.

Claims against Dr. Harrison

Plaintiff complains that Dr. Harrison prescribed only pain medication for his alleged injury, and failed to refer him to an orthopedic doctor for "follow up care" or to send him somewhere "to find out if it was a disc pinching a nerve or any other testing." Complaint 5 (Doc. 1). According to Plaintiff's own allegations, however, he had already received such testing before seeing Dr. Harrison. Plaintiff concedes that he was taken to the emergency room following his fall, and that he underwent x-rays and a CT scan as part of the hospital's evaluation of his injury. He was

released without treatment. He went to see Dr. Harrison the next day, and Dr. Harrison prescribed pain medication. The facts as alleged, showing that Plaintiff received specialized attention after his fall, including evaluation in a hospital emergency room and radiological testing, followed up by attention from the general care physician, establish a constitutionally adequate level of care and are insufficient to establish deliberate indifference to serious medical needs.

In his affidavit, Dr. Harrison provides additional information regarding the injuries Plaintiff sustained from his fall. Dr. Harrison states that "Plaintiff underwent X-rays of his spine and his right leg, knee, and ankle while at the local hospital, and those X-rays shoed no discernable injuries." Harrison Aff. ¶ 7 (Doc. 24-4). He further states that the treating physician at the hospital "diagnosed Plaintiff with musculoskeletal pain and discharged him with the recommendation that he follow up with the jail's medical staff within one or two days, that he apply ice to any sore areas for 24 hours, and that he take Tylenol or Motrin for any lingering pain." Id. at ¶ 8. Dr. Harrison saw Plaintiff two days after his return from the emergency room and "found nothing visibly wrong with Plaintiff's leg, arm, or back." Id. at ¶ 9. Dr. Harrison states that scheduled an orthopedic consult with an outside specialist, for May 12, 2010 (Id. at ¶ 10), but this testimony is disputed by Plaintiff's contention that Dr. Harrison refused to refer him to a specialist. Complaint, p. 5.

Even if the allegations in the Complaint and in Plaintiff's response are accepted as true, Plaintiff has offered nothing to contradict or conflict with Dr. Harrison's description of Plaintiff's injuries or of the results of the radiological tests from the hospital. Nothing in the record indicates that Dr. Harrison should have had notice of a serious medical treatment that required more intensive treatment than the treatment Plaintiff received. Plaintiff's claims against Dr. Harrison constitute nothing more than a disagreement with the mode or method of treatment provided. Consequently,

there are no genuine issues of material fact, and Dr. Harrison is entitled to judgment as a matter of law.

## CONCLUSION

In accordance with and for the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motions be **GRANTED** and that this action be **DISMISSED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 29th day of July, 2011.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge